UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JOSE RAMON TENEYQUE, 240111,

      Petitioner,

                                  CASE NO. 17-13833

v.

                                  HON. DENISE PAGE HOOD

CARMEN PALMER,

                                  MAG. STEPHANIE DAWKINS

      Respondent.

                                  DAVIS

_____

**ANSWER IN OPPOSITION TO PETITION FOR WRIT OF
HABEAS CORPUS**

# TABLE OF CONTENTS

Introduction ...................................................................................... 1

      Statements in Compliance with Habeas Rule 5(b) ......................... 3

      B.     Statute of Limitations ................................................ 3

      C.     Exhaustion ................................................................. 3

      D.     Procedural Default .................................................... 3

      E.     Non-retroactivity Doctrine ....................................... 3

Statement of the Case .................................................................... 4

      A.     Plea Facts .................................................................. 4

      B.     Procedural History ................................................... 6

Standard of Review Pursuant to AEDPA ................................... 9

Argument ...................................................................................... 14

I.     Teneyuque has failed to show that his trial counsel was
ineffective or that he has a right to withdraw his plea,
therefore, the Michigan Court of Appeals' denial of these
claims was not objectively unreasonable. ...................................... 14

      C.     Clearly established federal law on pleas. ............................. 23

      D.     Analysis of the involuntary plea claim ................................. 25

II.    Teneyuque's claims that he was sentenced based on
inaccurate information and that counsel was ineffective for
failing to object are meritless, thus, relief should be denied
on them. ........................................................................................ 26

III.   Teneyuque is not entitled to an evidentiary hearing on his
claims of ineffective assistance of counsel because they were
adjudicated on the merits by the state appellate court ................. 29

Conclusion ................................................................................... 32

Relief ................................................................................................ 37

Certificate of Service ...................................................................... 38

# INTRODUCTION

Petitioner, Jose Ramon Teneyuque, chose to drive his Chevy Suburban under the influence of alcohol and marijuana.  He was seen driving at a high-rate of speed while swerving and failing to stay in his lane.  He overcorrected and flipped the SUV.  Teneyuque and his fourteen-year-old son survived the crash—but his daughter was not so lucky.  Her skull was fatally fractured, but she drowned in her own blood before the brain trauma could take its toll.  At the scene, police noticed that Teneyuque reeked of alcohol and was visibly drunk.  Teneyuque pleaded "no contest" hoping that the sentencing judge would take his role in his daughter's death as lightly as he has.  The judge didn't.

As a result of his Saginaw County plea-based convictions of operating while impaired causing death, MCL 257.625(4), operating a motor vehicle with a high blood alcohol level, MCL 257.625(1)(c), operating a motor vehicle with an occupant under sixteen-years-old, MCL 257.625(7)(A)(ii), and as a third-habitual offender, MCL 769.11, the State now holds Teneyuque in custody in the Michigan Department of Corrections.  Teneyuque is currently serving two concurrent terms of

fifteen-to-thirty years, and a concurrent eighty-months-to-ten-years, respectively.

Teneyuque commenced this action under 28 U.S.C. § 2254 by filing a petition with this Court.  The State understands the petition to be raising the following claims:

> I.   Teneyuque has the right to withdraw his plea due to the ineffective assistance of trial counsel for failing to investigate defenses.
>
> II.  Teneyuque is entitled to resentencing because he was sentenced based on inaccurate information.
>
> III. Teneyuque is entitled to an evidentiary hearing because the State's denial of his motion for one is unreasonable.

Should the Court interpret the petition to be raising different claims, the State requests an opportunity to file a supplemental pleading.  To the extent that Teneyuque failed to raise any other claims that he raised in the state courts, those claims are now abandoned. *See Sommer v. Davis*, 317 F.3d 686, 691 (6th Cir. 2003) (holding that an issue is abandoned if a party does not present any argument respecting the issue in his brief).  Thus, habeas review of abandoned claims is barred.

The State now answers the petition and requests that it be denied.

## STATEMENTS IN COMPLIANCE WITH HABEAS RULE 5(b)

With respect to the bars that preclude habeas review, the State asserts the following in conformance with Habeas Rule 5(b):

### B.    Statute of Limitations

The State is not arguing that any of Teneyuque's habeas claims are barred by the statute of limitations.

### C.    Exhaustion

The State is not arguing that consideration of any of Teneyuque's habeas claims is barred by the failure to exhaust a claim for which a state court remedy exists.

### D.    Procedural Default

The State is not arguing that consideration of any of Teneyuque's habeas claims is barred by an unexcused procedural default.

### E.    Non-retroactivity Doctrine

The State is not arguing that consideration of any of Teneyuque's claims is barred by the non-retroactivity doctrine.

## STATEMENT OF THE CASE

### A.   Plea Facts

Immediately before the crash, Teneyuque was seen speeding and swerving in and out of his lane.  (9/4/14 Tr. at 43-46.)  Once police arrived at the scene of the crash, they noticed Teneyuque reeked of alcohol, was slurring his speech, and was visibly drunk.  (*Id.* at 77-78.) And everyone's suspicions were confirmed when two blood alcohol content (BAC) tests revealed that his BAC was between .3 and .201. (*Id.* at 91 & 110.)  The .201 reading was taken several hours after the crash.  (1/23/15 Tr. at 13.)    Teneyuque also had cocaine metabolites and marijuana in his system at the time of the crash.  (9/4/14 Tr. at 91.)

Teneyuque pleaded "no contest" in order to avoid civil liability and so that the People would move to dismiss the second-degree murder charge.  (1/23/15 Tr. at 3.)  He was informed that his advisory[1] sentencing guidelines were calculated at 50-to-150 months, but that the court was free to exceed those guidelines.  He was also told that the maximum penalty he faced was twenty-to-thirty years in prison.  (*Id.* at

---

[1] The trial court was bound by the guidelines unless it articulated substantial and compelling reasons for an upward departure at the time of sentencing, but that is no longer the case in Michigan.

4-5.)  The prosecutor stressed to the court and to Teneyuque that the People were seeking the maximum penalty allowed by law.  (*Id*. at 5.) And yet Teneyuque still knowingly and voluntarily waived his right to trial and took the plea.  (*Id*. at 5-10.)  The court asked him, "Is it your own choice to plead no contest?" to which he replied, "Yes."  (*Id*. at 10.) Teneyuque then told the court that the preliminary exam report supported the factual basis for his plea and each of his convictions.  (*Id*. at 12-13.)

The court correctly pointed out that the BAC test was not required to prove any of the charges except the operating with a high BAC charge, and the parties stipulated to that fact.  (*Id*. at 13.)  One last time, the court stressed that Teneyuque's guideline range of 50-to-150 was an estimate and subject to change, and he again indicated that he understood.  (*Id*. at 17-18.)  The plea was accepted.  (*Id*. at 18.)

The State opposes any factual assertions made by Teneyuque that are not directly supported by—or consistent with—the state court record, because Teneyuque has failed to overcome the presumption of factual correctness under 28 U.S.C. § 2254(e)(1) or meet the requirements of 28 U.S.C. § 2254(e)(2).

5

**B.    Procedural History**

Teneyuque was convicted of operating while impaired causing death; operating a motor vehicle with a high blood alcohol level; operating a motor vehicle with an occupant under sixteen-years-old; and as a third-habitual offender.  The trial court sentenced him to two concurrent terms of fifteen-to-thirty years, and a concurrent eighty-months-to-ten-years, respectively.

Following his conviction and sentence, Teneyuque filed a delayed application for leave to appeal in the Michigan Court of Appeals, which raised the following claims:

> I.    The defendant has the right to withdraw his no contest pleas due to ineffective assistance of counsel where his trial court attorney failed to investigate the scientific basis behind the hospital blood test that erroneously reported the defendant's blood alcohol content to be .30  and where his trial court attorney failed to investigate the reliability of the state police blood test results, and where his trial court did not advise his client of any defense before defendant pleaded no contest, and where defendant would not have pleaded no contest if he would have known that he had an expert witness ready, willing, and able to testify in support of a valid defense at trial.

> II.    The defendant has the right to be re-sentenced based upon accurate information, where the sentencing court imposed sentence by mistakenly considering erroneous information in the defendant's PSIR that concluded that defendant's blood alcohol content (BAC) was .30.

6

III.  The defendant has the right to be re-sentenced due to ineffective assistance of counsel where his trial court attorney did not investigate the scientific basis behind the hospital blood test that erroneously reported the defendant's blood alcohol content to be .30 where the prosecutor argued in his sentencing memorandum that defendant was at a .30—nearly 4 times the legal limit and where the trial court attorney did not object to this erroneous information in the defendant's PSIR.

IV.  The defendant has the right to be re-sentenced where the scoring of OV1, OV2, OV6, OV 17 and OV18 were all incorrect and where the prosecutor argued that defendant had a total of 147 OV points.

The Michigan Court of Appeals denied Teneyuque's application "for lack of merit in the grounds presented.".  *People v. Teneyuque*, No. 331853, (Mich. Ct. App. Apr. 11, 2016, Order at 1.)

Teneyuque subsequently filed an application for leave to appeal in the Michigan Supreme Court which raised the same claims as in the Michigan Court of Appeals.  The Michigan Supreme Court denied the application because it was not persuaded that the questions presented should be reviewed by the Court.  *People v. Teneyuque*, 887 N.W.2d 424 (Mich. 2016) (unpublished table decision).

Teneyuque did not appeal to the United States Supreme Court or seek collateral review before the trial court.  Rather, he filed the instant petition for habeas relief.

## STANDARD OF REVIEW PURSUANT TO AEDPA

Teneyuque's habeas petition is governed by the Antiterrorism and Effective Death Penalty Act (AEDPA).  AEDPA prevents a federal court from granting habeas corpus relief based on any claim "adjudicated on the merits" in state court, unless the petitioner can establish that the state court adjudication:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law as determined by the Supreme Court of the United States; or

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

Under the "contrary to" clause of § 2254(d)(1), the petitioner must establish that "the state court arrive[d] at a conclusion opposite to that reached by [the Supreme] Court on a question of law or . . . decide[d] a case differently than [the Supreme] Court has on a set of materially indistinguishable facts."  *Metrish v. Lancaster*, 569 U.S. 351, 357 n.2 (2013) (internal quotation marks and citation omitted).

Under the "unreasonable application" clause of § 2254(d)(1), the petitioner must establish that, after "identif[ying] the correct governing legal principle from the Supreme Court's decisions, [the state court] unreasonably applie[d] that principle to the facts of [his] case." *Hill v. Curtin*, 792 F.3d 670, 676 (6th Cir. 2015) (en banc) (alteration omitted). "[T]he state court's decision must have been more than incorrect or erroneous[;]" rather, it must have been "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.* (quoting *Wiggins v. Smith*, 539 U.S. 510, 520–21 (2003)). "[E]ven clear error will not suffice." *White v. Woodall*, 134 S. Ct. 1697, 1702 (2014). Again, the state court's determinations of law and fact must be "so lacking in justification" as to give rise to error "beyond any possibility for fairminded disagreement." *Dunn v. Madison*, 138 S. Ct. 9, 12 (2017) (per curiam) (quoting *Harrington v. Richter*, 562 U.S. 86, 103 (2011)).

Moreover, not just any Supreme Court decision will do under § 2254(d)(1). "Clearly established Federal law for purposes of § 2254(d)(1) includes only the holdings, as opposed to the dicta," of the Supreme Court's decisions. *Woods v. Donald*, 135 S. Ct. 1372, 1376 (2015) (per

curiam) (internal quotations and citations omitted).  Where no Supreme Court case has confronted "the specific question presented" by the habeas petitioner, "the state court's decision [cannot] be contrary to any holding from this Court." *Woods v. Donald*, 135 S. Ct. at 1377 (internal quotation marks and citation omitted).  Moreover, the Supreme Court decision must have been on the books at "the time the state court render[ed] its decision." *Greene v. Fisher*, 565 U.S. 34, 38 (2011) (internal quotation marks and emphasis omitted); *see also Cullen v. Pinholster*, 563 U.S. 170, 182 (2011) ("State-court decisions are measured against [the Supreme] Court's precedents as of the time the state court renders its decision.") (internal quotation marks omitted).

"It is not an unreasonable application of clearly established Federal law for a state court to decline to apply a specific legal rule that has not been squarely established by this Court." *Richter*, 562 U.S. at 101 (internal quotation marks and citation omitted).  As the Supreme Court has repeatedly pointed out, "circuit precedent does not constitute clearly established Federal law, as determined by the Supreme Court." *Kernan v. Cuero*, 138 S. Ct. 4, 8 (2017) (per curiam) (quoting *Glebe v. Frost*, 135 S. Ct. 429, 430 (2014)) (per curiam).  Likewise, neither do

"state-court decisions, treatises, or law review articles" constitute clearly established Federal law as determined by the Supreme Court. *Cuero*, 138 S. Ct. at 8.

And federal court of appeals precedent cannot "refine or sharpen a general principle of Supreme Court jurisprudence into a specific legal rule that [the Supreme] Court has not announced." *Marshall v. Rodgers*, 569 U.S. 58, 63 (2013) (per curiam) (citation omitted); *see also Lopez v. Smith*, 135 S. Ct. 1, 4 (2014) (providing that absent a decision by the Supreme Court addressing "the specific question presented by [a] case" a federal court cannot reject a state court's assessment of claim).

Under § 2254(d)(2), the "unreasonable determination" subsection, "a determination of a factual issue made by a State court shall be presumed to be correct," and the petitioner "shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." *Wood v. Allen*, 558 U.S. 290, 293 (2010). "[A] state-court's factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance." *Burt v. Titlow*, 571 U.S. 12, 15 (2013) (internal quotation marks and citation omitted).

Finally, Teneyuque's burden is made even heavier by the fact that a federal court is "limited to the record that was before the state court that adjudicated the claim on the merits." *Pinholster*, 563 U.S. at 181.

# ARGUMENT

I. **Teneyuque has failed to show that his trial counsel was ineffective or that he has a right to withdraw his plea, therefore, the Michigan Court of Appeals' denial of these claims was not objectively unreasonable.**

The Michigan Court of Appeals reasonably denied Teneyuque's delayed application for leave to appeal claiming that his guilty plea was involuntary due to the ineffective assistance of his trial counsel. Teneyuque ignored the trial court's several innuendos that he was going to receive a sentence above the guidelines for killing his daughter and he still took the plea hoping to avoid the obvious. And now he looks to this Court to give him a second bite at the apple merely because he refuses to accept the consequences of his actions. Teneyuque should be denied habeas relief because none of his federal constitutional rights were violated.

## A. Clearly established federal law on claims of ineffective assistance of trial counsel and analysis.

A claim of ineffective assistance of counsel is governed by the familiar standard set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). "Surmounting *Strickland's* high bar is never an easy task." *Padilla v. Kentucky*, 559 U.S. 356, 371 (2010). "Even under *de novo*

review, the standard for judging counsel's representation is a most deferential one." *Richter*, 562 U.S. at 105.

To establish that he received ineffective assistance of counsel, a petitioner must show, first, that counsel's performance was deficient and, second, that he was prejudiced by counsel's action or inaction. *Wilson v. Parker*, 515 F.3d 682, 698 (6th Cir. 2008) (citing *Strickland*, 466 U.S. at 687–88).  Further, "[j]udicial scrutiny of counsel's performance must be highly deferential. . . . Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 689. "*Strickland* . . . calls for an inquiry into the objective reasonableness of counsel's performance, not counsel's subjective state of mind." *Richter*, 131 S. Ct. at 790.

A lawyer does not perform deficiently or prejudice his client by failing to raise frivolous objections. *See Harris v. United States*, 204 F.3d 681, 683 (6th Cir. 2000); *Strickland*, 466 U.S. at 694.  "Counsel cannot be ineffective for failing to object to what was properly done." *United States v. Sanders*, 404 F.3d 980, 986 (6th Cir. 2005).  "Failure to raise meritless

15

objections is not ineffective lawyering; it is the very opposite." *Clark v. Collins*, 19 F.3d 959, 966 (5th Cir. 1994). "An attorney is not required to present a baseless defense or to create one that does not exist." *Krist v. Foltz*, 804 F.2d 944, 946 (6th Cir. 1986).

Under *Strickland*, a court must presume that decisions by counsel as to whether to call or question witnesses are matters of trial strategy. *Hutchison v. Bell*, 303 F.3d 720, 749 (6th Cir. 2002). Decisions as to what evidence to present and whether to call certain witnesses are presumed to be a matter of trial strategy, and the failure to call witnesses or present other evidence constitutes ineffective assistance of counsel only when it deprives a defendant of a substantial defense. *See Chegwidden v. Kapture*, 92 F. App'x 309, 311 (6th Cir. 2004); *Hutchison v. Bell*, 303 F.3d 720, 749 (6th Cir. 2002).

Further, the reviewing court is required not simply to give the attorney the benefit of the doubt, but to affirmatively entertain the range of possible reasons counsel may have had for proceeding as he did. *Pinholster*, 131 S. Ct. at 1407. "[R]eliance on 'the harsh light of hindsight' to cast doubt on a trial that took place [] years ago is

16

precisely what *Strickland* and AEDPA seek to prevent." *Richter*, 131 S. Ct. at 789.

The second *Strickland* prong, prejudice, requires a petitioner to show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694. "It is not enough to show that the errors had some conceivable effect on the outcome of the proceeding." *Richter*, 131 S. Ct. at 792 (citation omitted). "The likelihood of a different result must be substantial, not just conceivable." *Id*.

The burden is on the petitioner to establish not merely that counsel's errors created the possibility of prejudice, but rather "that they worked to [his *actual* and substantial disadvantage, infecting [his] entire trial with errors of constitutional dimension." *Murray v. Carrier*, 477 U.S. 478, 494 (1986), quoting *United States v. Frady*, 456 U.S. 152, 170 (1982). The defendant must "affirmatively prove," not just allege, prejudice. *Strickland*, 466 U.S. at 693. "*Strickland's* test for prejudice is a demanding one. 'The likelihood of a different result must be

substantial, not just conceivable.'" *Storey v. Vasbinder*, 657 F.3d 372, 379 (6th Cir. 2011) (quoting *Richter*, 131 S. Ct. at 792). *See further United States v. Boone*, 62 F.3d 323, 327 (10th Cir. 1995) ("[A]ll that the Defendant urges is speculation, not a reasonable probability that the outcome would have been different. Accordingly, he cannot establish prejudice.").

To demonstrate prejudice in a case where a petitioner was convicted after a jury or bench trial, the reviewing court must determine, based on the totality of the evidence before the factfinder, "whether there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt." *Strickland*, 466 U.S. at 695. "[A] verdict or conclusion only weakly supported by the record is more likely to have been affected by errors than one with overwhelming record support." *Id.* at 696. Because both prongs must be satisfied to establish ineffective assistance, if a petitioner cannot satisfy one prong, the other need not be considered. *Id.* at 697.

Additionally, on habeas review, consideration is even further limited because this Court must give deference to both the trial counsel

18

and the state appellate court reviewing their performance.  The
Supreme Court has stressed that the "standards created by *Strickland*
and § 2254(d) are both 'highly deferential,' and when the two apply in
tandem, review is 'doubly' so." *Richter*, 131 S. Ct. at 788 (citations
omitted).  Thus, a state prisoner seeking a federal writ of habeas corpus
on the ground that he was denied effective assistance of counsel "must
do more than show that he would have satisfied *Strickland*'s test if his
claim were being analyzed in the first instance." *Bell v. Cone*, 535 U.S.
685, 698–99 (2002); *Durr v. Mitchell*, 487 F.3d 423, 435 (6th Cir. 2007).
On habeas review, the question "is not whether a federal court believes
the state court's determination under the *Strickland* standard was
incorrect but whether that determination was unreasonable—a
substantially higher threshold." *Knowles v. Mirzayance*, 556 U.S. 111,
123 (quoting *Schriro v. Landrigan*, 550 U.S. 465, 473) (internal
quotation marks omitted).  "And, because the *Strickland* standard is a
general standard, a state court has even more latitude to reasonably
determine that a defendant has not satisfied that standard."
*Mirzayance*, 556 U.S. at 123.

And ineffective assistance of trial counsel claims that do not challenge the voluntary or intelligent nature of a defendant's plea are considered non-jurisdictional defects that are waived by a plea. See *United States v. Stiger*, 20 F. App'x 307, 309 (6th Cir. 2001) (a claim that counsel was ineffective for failing to raise an insanity defense is waived by a voluntary guilty plea.) An unconditional plea constitutes a waiver of all pre-plea non-jurisdictional constitutional challenges. *Tollett v. Henderson*, 411 U.S. 258, 267 (1973) ("[A] guilty plea represents a break in the chain of events which has preceded it in the criminal process. When a criminal defendant has solemnly admitted in open court that he is in fact guilty of the offense with which he is charged, he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea. He may only attack the voluntary and intelligent character of the guilty plea by showing that the advice he received from counsel was not within [constitutional standards]."); accord *United States v. Broce*, 488 U.S. 563, 569 (1989). A guilty plea also acts as a waiver of any challenge to the voluntariness of his confession under the Due Process Clause or *Miranda.* See *United States v. Wright*, 873 F.2d

437, 442 (1st Cir. 1989); *Rogers v. Maggio*, 714 F.2d 35, 38 (5th Cir. 1983); *United States v. Montoya-Robles*, 935 F. Supp. 1196, 1204 n.5 (D. Utah 1996). Claims of pre-plea ineffective assistance not relating to the acceptance of the plea are waived under the same *Tollett* rule. *United States v. Stiger*, 20 F. App'x 307, 309 (6th Cir. 2001).

A no-contest plea invokes the same waiver principles as a guilty plea. See *Post v. Bradshaw*, 621 F.3d 406, 426–27 (6th Cir. 2010); *United States v. Freed*, 688 F.2d 24, 25 (6th Cir. 1982); accord *Gomez v. Berge*, 434 F.3d 940, 942 (7th Cir. 2006).

While a voluntary plea generally waives claims of ineffective assistance of counsel, it does not do so insofar as the ineffectiveness is alleged to have rendered the plea involuntary. See *United States v. Glinsey*, 209 F.3d 386, 392 (5th Cir. 2000) and *Claybron v. Stovall*, 2007 WL 551599, at *6 (E.D. Mich. 2007) ("[A] voluntary guilty plea waives all claims of ineffective assistance of counsel, except insofar as the ineffectiveness is alleged to have rendered the guilty plea involuntary."). Criticism of counsel's conduct during the pre-plea period are foreclosed by a plea.

### B.    Analysis of the ineffective assistance of counsel claim

In this case, Teneyuque pleaded "no contest" and, thus, waived his claims of ineffective assistance of counsel except as it relates to the voluntariness of his plea. *Tollett v. Henderson*, 411 U.S. 258, 267 (1973). To the extent the claim involves the voluntariness of the plea, Teneyuque has not satisfied *Strickland* because trial counsel was not constitutionally deficient. Trial counsel saw the writing on the wall: The state did not need BAC to convict Teneyuque of (1) operating while impaired causing death; (2) operating a motor vehicle with an occupant under sixteen-years-old; and (3) as a third-habitual offender. As the trial court pointed out and Teneyuque verified, (1/23/15 Tr. at 12-13.), eyewitness testimony confirmed that he was operating while under the influence of alcohol, other testing confirmed marijuana and remnants of cocaine in his system at the time of the crash—and his daughter died as a result. (9/4/14 Tr. at 43-46, 77-78, & 91.) His fourteen-year-old son testified to being in the car at the time of the wreck. (*Id.* at 21-22.)

Even assuming, for argument sake, that trial counsel found an expert to testify that both BAC tests were flawed, which could only possibly speak to the operating a motor-vehicle with a high blood

alcohol content, it was not a *substantial* defense. *See Chegwidden v. Kapture*, 92 F. App'x 309, 311 (6th Cir. 2004); *Hutchison v. Bell*, 303 F.3d 720, 749 (6th Cir. 2002).   It would have come down to nothing more than a credibility determination between experts at trial, and such questions do not evoke "a reasonable . . . probability [of a different result] sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694.  In other words, we can be confident based on the evidence that all of the elements of all of the crimes would have been satisfied at a trial including the high BAC because the state would have presented its BAC results to the jury in conjunction with the other evidence.  Teneyuque's trial counsel recognized as much and, exercising sound strategy, he urged a plea hoping for the best possible outcome. Thus, counsel was effective.

### C.    Clearly established federal law on pleas.

A plea must be voluntarily and knowingly made in order to satisfy the dictates of due process.  *Hart v. Marion Corr. Inst.*, 927 F.2d 256, 257 (6th Cir. 1991); *King v. Dutton*, 17 F.3d 151, 153 (6th Cir. 1994) (citing *Boykin v. Alabama*, 395 U.S. 238 (1969)).  The defendant must be aware of the "relevant circumstances and likely consequences."

23

*Hart*, *supra*; *King*, *supra*.  In general, this means that he must be aware of the maximum sentence that may be imposed.  *King*, 17 F.3d at 154. Further, the "agents of the State may not produce a plea by actual or threatened physical harm or by mental coercion overbearing the will of the defendant." *Brady v. United States*, 397 U.S. 742, 750 (1970).  In other words, "[a] guilty plea, if induced by promises or threats which deprive it of the character of a voluntary act, is void." *Machibroda v. United States*, 368 U.S. 487, 493 (1962).

When a state defendant brings a federal habeas petition challenging the voluntariness of his plea, the state generally satisfies its burden of showing the plea was voluntary by producing a written transcript of the state court proceeding.  *Garcia v. Johnson*, 991 F.2d 324, 326 (6th Cir. 1993).  Where the transcript is adequate to show that the plea was voluntary and intelligent, a presumption of correctness attaches to the state court findings of fact and to the judgment itself. *Id.* at 326-27.  A satisfactory state-court transcript containing findings, after a proper colloquy, places upon the petitioner a "heavy burden" to overturn the state findings.  *Id.* at 328.  The Sixth Circuit has held "that where the [trial] court has scrupulously followed the required

24

procedure, 'the defendant is bound by his statements in response to that court's inquiry.'" *Baker v. United States*, 781 F.2d 85, 90 (6th Cir. 1986) (quoting *Moore v. Estelle*, 526 F.2d 690, 696-97 (5th Cir. 1976)).

Further, "'it is well-settled that post-sentencing 'buyer's remorse' is not a valid basis on which to dissolve a plea agreement and the fact that a defendant finds himself faced with a stiffer sentence than he had anticipated is not a fair and just reason for abandoning a guilty plea.'" *Meek v. Bergh*, 526 F. App'x 530, 536 (6th Cir. 2013) (quoting *Moreno-Espada v. United States*, 666 F.3d 60, 67 (1st Cir. 2012) & citing *United States v. Wilson*, 351 F. App'x 94, 96 (6th Cir. Nov. 5, 2009)).

### D.    Analysis of the involuntary plea claim

Here, Teneyuque identifies no basis for any belief that his plea was anything but knowing and voluntary.  Rather, it is a textbook case of "buyer's remorse" and Teneyuque's dissatisfaction with his sentence is not grounds for habeas relief.  *Id*.  In fact, the trial court went through great pains to ensure Teneyuque knew exactly what he was doing.  (1/23/15 Tr. at 3-19.)  As Teneyuque has identified no basis for relief, his claim that the plea was not knowing and voluntary is without merit and the state appellate court reasonably denied it.

25

In short, Claim I does not warrant relief, thus, it should be denied.

## II.  Teneyuque's claims that he was sentenced based on inaccurate information and that counsel was ineffective for failing to object are meritless, thus, relief should be denied on them.

Teneyuque next argues that he was sentenced based on inaccurate information and that his trial counsel was ineffective for failing to mount meritless objections.  He also asserts that—minus his plea of "no contest"—he has "maintained his actual innocence throughout the proceedings." (Pg. ID# 47.)  Teneyuque also hasn't a leg to stand on with regard to his attack on the validity of either of the BAC tests done after the wreck but, nevertheless, he argues that his BAC was actually *as low as* .182 in the second test that was taken hours after the crash. (Pg. ID# 46.)  Okay.  Relief should be denied.

### A.  Clearly established federal law on sentencing on inaccurate information.

 "It is undisputed that convicted defendants . . . have a due process right to a fair sentencing procedure." *United States v. Anders*, 899 F.2d 570, 575 (6th Cir. 1990).  In passing sentence, a court should be provided as much accurate information as possible in order to render an appropriate sentence.  Due process requires that a defendant be

26

afforded an opportunity to refute information relied upon by the sentencing judge, if such information can be shown to have been materially false. *Collins v. Buchkoe*, 493 F.2d 343 (6th Cir. 1974).

The clearly established federal law concerning claims of ineffective assistance of counsel is discussed, *supra*.

**B.   Analysis**

Teneyuque cannot show that any of the information in the PSIR is false, let alone material. Yet he urges this Court to consider the BAC tests in a vacuum and to arbitrarily accept his premise that the test results were erroneous—all while ignoring the many other reasons as to why the trial court rendered the sentence it did.

The trial court noted that Teneyuque refused to conform to societal norms and to obey the law. (3/10/15 Tr. at 69.) It further addressed his inconsistent statements up until the day of sentencing and his apparent refusal to accept responsibility for killing his daughter. (*Id.* at 67.) The fact that he tried to flee the scene of the crash and the danger Teneyuque poses to society. (*Id.*) And the trial court also stressed that the guidelines in his case did not account for the totality of Teneyuque's crimes and circumstances. (*Id.* at 69-69.) In

27

other words, the trial court listed substantial and compelling reasons as to why Teneyuque received the sentence that he did, and even if he could show the BAC tests to be "inaccurate" it would be immaterial because it would not have changed the sentence.  He has not, and cannot meet his burden.  *Collins v. Buchkoe*, 493 F.2d 343 (6th Cir. 1974).

Moreover, Teneyuque's trial counsel was not ineffective for failing to mount meaningless objections.  In fact, trial counsel made several objections to the facts contained in the PSIR throughout the sentencing hearing and he also filed a sentencing memorandum arguing Teneyuque's position.  (3/10/15 Tr. at 4-34 & 37.)  No material or meaningful purpose existed to compel trial counsel to object to the BAC test results and, thus, trial counsel was not ineffective for choosing not to do so.  *Krist v. Foltz*, 804 F.2d 944, 946 (6th Cir. 1986).

Relief for claim II should be denied.

### III.   Teneyuque is not entitled to an evidentiary hearing on his claims of ineffective assistance of counsel because they were adjudicated on the merits by the state appellate court.

Teneyuque argues that he is entitled to an evidentiary hearing to further develop his waived claim of ineffective assistance of counsel.  He is not.

Federal habeas review under 28 U.S.C. § 2254(d) is "limited to the record that was before the state court that adjudicated the claim on the merits."  *Cullen v. Pinholster*, 563 U.S. 170, 179 (2011). "[R]eview under § 2254(d)(1) focuses on what a state court knew and did."  *Id*. at 182. The Court reasoned that "[i]t would be strange to ask federal courts to analyze whether a state court's adjudication resulted in a decision that unreasonably applied federal law to facts not before the state court." *Pinholster*, 563 U.S. at 182–83.  As stated by the Sixth Circuit, "federal courts are prohibited from conducting evidentiary hearings to supplement existing state court records when a state court has issued a decision on the merits with respect to the claim at issue." *Ballinger v. Prelesnik*, 709 F.3d 558, 561 (6th Cir. 2013).  Indeed, the Ballinger Court further stated: "While allowing a petitioner to supplement an otherwise sparse trial court record may be appealing, especially where

he diligently sought to do so in state court, the plain language of *Pinholster* and *Harrington* precludes it." See further *Donaldson v. Booker*, 505 F. App'x 488, 493 (6th Cir. 2012) (rejecting argument that *Pinholster* does not apply in cases where "petitioner requested an evidentiary hearing in state court and was thereby not at fault for failure to develop the factual record in state court").

In *Werth v. Bell*, 692 F.3d 486, 492-94 (6th Cir. 2012), the Sixth Circuit held that under *Harrington*, a Michigan Court of Appeals' order denying relief "for lack of merit in the grounds presented" was presumed to be an adjudication on the merits, and thus "AEDPA deference applies . . . absent some 'indication or [Michigan] procedural principle to the contrary.'" See also *Nali v. Phillips*, 681 F.3d 837, 851–53 (6th Cir. 2012) (Michigan Court of Appeals denial of motion to remand "for [petitioner's] failure to persuade the Court of the need to remand" the case at that time constituted adjudicated on the merits of Petitioner's claim).

Here, the Michigan Court of Appeals denied Teneyuque's delayed application for leave to appeal "for lack of merit in the grounds presented." *People v. Teneyuque*, No. 331853, (Mich. Ct. App. Apr. 11,

30

2016, Order at 1.)  This was an adjudication on the merits.  *Werth v. Bell*, 692 F.3d 486, 492-94 (6th Cir. 2012).  And this Court is not permitted to supplement the existing state court record by ordering an evidentiary hearing.  *Ballinger v. Prelesnik*, 709 F.3d 558, 561 (6th Cir. 2013).

Accordingly, claim III should be denied.

## CONCLUSION

The state courts' rejection of Teneyuque's claims did not result in decisions that were contrary to federal law, unreasonable applications of federal law, or unreasonable determinations of the facts.  Teneyuque was "entitled to a fair trial but not a perfect one."  *Delaware v. Van Arsdall*, 475 U.S. 673, 681 (1986); *see also United States v. Hasting*, 461 U.S. 499, 508–w09 (1983) ("[T]here can be no such thing as an error-free, perfect trial" and the Constitution "does not guarantee such a trial.")  The state-court decisions in this case were not "so lacking in justification" that they resulted in "an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement."  *Richter*, 562 U.S. at 103.  The formidable threshold for granting habeas relief has not been met because fairminded jurists could disagree on the correctness of the state court's decision.  *Yarborough*, 541 U.S. at 664.  Consequently, habeas relief should be denied.

Additionally, the State opposes any requests for bond, oral argument, or any other relief, including a certificate of appealability.

The State also contends that Teneyuque has not demonstrated

entitlement to discovery.  Unlike typical civil litigants, "[h]abeas

petitioners have no right to automatic discovery."  *Johnson v. Mitchell*,

585 F.3d 923, 934 (6th Cir. 2009) (quoting *Stanford v. Parker*, 266 F.3d

442, 460 (6th Cir. 2001)).  Rule 6(a) permits district courts to authorize

discovery in habeas corpus proceedings under the Federal Rules of Civil

Procedure only "for good cause."  R. Governing 2254 Cases in the U.S.

Dist. Cts. 6(a).  "Rule 6 embodies the principle that a court must provide

discovery in a habeas proceeding only 'where specific allegations before

the court show reason to believe that the petitioner may, if the facts are

fully developed, be able to demonstrate that he is . . . entitled to relief.' "

*Williams v. Bagley*, 380 F.3d 932, 974 (6th Cir. 2004) (quoting *Bracy v.

Gramley*, 520 U.S. 899, 908–09 (1997)).  "Rule 6 does not 'sanction

fishing expeditions based on a petitioner's conclusory allegations.' "

*Williams*, 380 F.3d at 974 (quoting *Rector v. Johnson*, 120 F.3d 551, 562

(5th Cir. 1997)); Habeas Rule 6(a).  "Conclusory allegations are not

enough to warrant discovery under Rule 6; the petitioner must set forth

specific allegations of fact."  *Williams*, 380 F.3d at 974 (internal

quotation marks and citation omitted).  Teneyuque has not met this burden.

If this Court denies the petition, the State asserts that Teneyuque is also not entitled to a certificate of appealability (COA) so as to proceed further.  In order to obtain a COA, a petitioner must make "a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  To demonstrate this denial, the petitioner is required to show that reasonable jurists could debate whether, or agree that, the petition should have been resolved in a different manner, or that the issues presented were adequate to deserve encouragement to proceed further.  *Slack v. McDaniel*, 529 U.S. 473, 483–84 (2000); *see also Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003) ("Under the controlling standard, a petitioner must 'sho[w] that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further.'") (citations omitted).

When a district court rejects a habeas petitioner's constitutional claims on the merits, the petitioner must demonstrate that reasonable

jurists would find the district court's assessment of the constitutional claims to be debatable or wrong.  *Slack*, 529 U.S. at 483–84, *see also Dufresne v. Palmer*, 876 F.3d 248, 254 (6th Cir. 2017) ("To meet *Slack*'s standard, it is not enough for a petitioner to allege claims that are arguably *constitutional*; those claims must also be arguably *valid* or *meritorious*.")

Likewise, when a district court denies a habeas petition on procedural grounds without reaching the petitioner's underlying constitutional claims, a COA should issue, and an appeal of the district court's order may be taken, if the petitioner shows that jurists of reason would find it debatable whether the petitioner states a valid claim of the denial of a constitutional right, and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling.  *Slack*, 529 U.S. at 484.

When a plain procedural bar is present, and the district court is correct to invoke it to dispose of the case, a reasonable jurist could not conclude either that the district court erred in dismissing the petition or that the petition should be allowed to proceed further.  In such a

circumstance, no appeal would be warranted.  *Id.*, *see also Dufresne*, 876 F.3d at 254.

"At the end of the day, 'the gate keeping functions of certificates of appealability [is to] separate the constitutional claims that merit the close attention of . . . this court from those claims that have little or no viability.' "  *Dufresne*, 876 F.3d at 254 (quoting *Porterfield v. Bell*, 258 F.3d 484, 487 (6th Cir. 2001)).  Here, this Court should deny Teneyuque a COA on all of his claims.  The claims simply "have little or no viability."

## RELIEF

For the reasons stated above, this Court should deny the petition.

The Court should also deny Teneyuque any requested discovery,

evidentiary hearings, bond, oral argument, and any other relief he

seeks in this action, including a certificate of appealability.

Respectfully submitted,

Bill Schuette
Attorney General

s/Garett L. Koger

Assistant Attorney General
Criminal Appellate Division
P.O. Box 30217
Lansing, MI  48909
(517) 373-4875
Kogerg@michigan.gov
P82115

Dated: May 11, 2018
2017-0204101-A Teneyuque, Jose/Answer

## CERTIFICATE OF SERVICE

I hereby certify that on May 11, 2018, I electronically filed the foregoing papers with the Clerk of the Court using the ECF system which will send notification of such filing to the following:

HONORABLE DENISE PAGE HOOD
MAGISTRATE JUDGE STEPHANIE DAWKINS DAVIS
MITCHELL T. FOSTER, ATTORNEY FOR PETITIONER

Respectfully submitted,

Bill Schuette
Attorney General

s/Garett L. Koger

Assistant Attorney General
Criminal Appellate Division
P.O. Box 30217
Lansing, MI  48909
(517) 373-4875
Kogerg@michigan.gov
P82115

38